Mr. Justinger, the Court appreciates your accepting the CJA appointment. Thank you, Honors. Good morning, and may it please the Court. My name is Adam Justinger. I represent the appellant in this matter, Ms. Ashley Howard. We are here today on appeal for three issues. They all resolve or revolve around whether or not the District Court erred in admitting Exhibit 45, which is a picture, a blurry picture of some blue circular pills, and Exhibit 44, which is a string of text now messages. We believe that the District Court did abuse its discretion in admitting these two key exhibits in this case, and that the error was not harmless. The reason that the error was not harmless is these two exhibits are virtually the only evidence that ties Ms. Howard to the contraband that was found later after a search inside of the vehicle that she was operating. In this case, we've raised three issues. I will start with the first issue, and that is that the District Court abused its discretion by admitting Exhibits 44 and 45 under Federal Rules of Evidence 403 and 404B. Now, to properly preserve our claim, we objected under both 403 and 404B grounds. We separated those within our brief, again, to preserve both issues. I think the precedent is clear from this Court that now that we've preserved those, we can combine that 403 analysis within Factor 404B, so that's what I intend on doing today. So under 404B, if we look at the four-part test that this Court has implemented, starting with the first factor, we have to look at whether or not the evidence was relevant to a material issue in this case. I think if we break that down, we look at the material issue side of things. This is a possession with intent to distribute case, along with a gun case. Knowledge, intent, those are going to be a material issue in any of these cases, but I think we have to start at the front end of whether or not this evidence is relevant to that material issue. Our position is that it is not. The Text Now message thread, the United States has done nothing to show that Ms. Howard actually sent these messages. Same thing with the pictures, that she even knew that this picture in Exhibit 45 existed on her device. If we look at the second prong, it's whether or not the exhibits are similar in kind or if they were overly remote to the crime that was charged. In this case, the traffic stop that occurred was March 20th of 2023. If we look at Exhibit 44, which is the Text Now texting thread, those messages were from March of 2022. We have approximately a year gap, and I would note for this court that there were no other messages found on Ms. Howard's device. No text, no other Text Now messages, no Facebook messages, Snapchat, Instagram, name any other platform where you can message send. There were nothing else that were similar to these Text Now messages. Same thing with the picture. They did a full phone extraction. The only picture that they found is this blurry picture of these blue circular pills. There was no other media, videos, photos, anything that was similar to this picture. The picture of the blue pills, wasn't that done on like an iPhone that was not hers? Like, was there metadata or something that showed that? Correct, Your Honor. So, during direct examination when the prosecution was trying to offer in this photo, the detective testified that he had no idea where this photo came from other than he knew it was on the phone. He didn't know the dates. He knew nothing about this. On cross-examination, we brought in the metadata, presented that to him, and through the metadata we learned that this photo was taken on an iPhone 13. My client, Ms. Howard, had an iPhone 11. The detective testified that he didn't know if this was located in an app, if it was deleted, if it was in a cloud. He had no idea where it came from, and that the picture originated on, I believe it was in December of 2021, so about 15 months before the traffic stop. So, again, we believe that this isn't something that's similar. There wasn't a bunch of evidence with pictures or videos of narcotics or guns that were found on her phone. This was one isolated thing that was somehow on the device, and again, we don't know where it was. The third factor the court needs to look at is whether or not both exhibits were proven by a preponderance of the evidence. I think this is a really important one to focus on because the United States has the burden to show that these prior bad acts were committed by Ms. Howard. If we start with Exhibit 44, which is the TextNow string, there is no evidence that shows that she was the individual that was sending these messages. We run into an authentication issue, which I think we see often in social media or just messaging cases like this, but I think if we look at the facts of this case, when we were both on direct and on cross-examination, the detective, again, with these TextNow messages, all he had was the extraction report and these messages. We didn't know what device these messages were sent from. We didn't have any GPS data. We didn't have any login information about where it was. I think that's all evidence that should have been presented to show whether or not Ms. Howard was the one that was actually authoring these TextNow messages. I would also go a step further and say if we look at the messages themselves, I think just looking at the messages, it's clear that Ms. Howard was not the individual sending these messages from her phone. What I mean by that is if we look at the very first page of our appendix that we submitted, which is the first page of the Exhibit 44 TextNow messages, the very first message that sent in TextNow is, hey, my phone fucked up. I don't know why Ms. Howard would be sending that from her phone, insinuating that her phone's broken and she can't send a message on it. I think just even looking at the language of the text messages themselves show that somebody else is sending these messages. Again, we don't know if these messages were on the phone or if they were within the app. What I mean by that is when the extraction comes back, I'm sitting up here arguing in front of the court right now. My Facebook is logged in back at my house on my computer that my wife has access to. She could be sending messages left and right on that. Would it be helpful and it would prove that I didn't send those messages if that computer is in Fargo, North Dakota, and I'm sitting here in St. Paul, Minnesota. But we don't really have any way to prove that. So if we look at the lack of evidence. But let me, you know, before we get too much further, I wanted to ask about harmless error because if you don't have the confrontation clause, let's say the confrontation clause falls away, we're in non-constitutional error, which is, you know, did it have more than a slight influence on the verdict type of error. And she talked about in at least one of the messages, they're popping the doors, you had a limiting instruction, you weren't putting in prior convictions, I mean, it just seems to me like a lot of this is academic if you don't remember the confrontation clause because the error was harmless. You're right. I disagree with that. I do think the error is harmless. Again, what the government is using these two exhibits for is to prove knowledge and intent. If we look at those messages about, I believe it was to Toy Toy, about popping the doors, I think what we have here is we have Ms. Howard inside of a vehicle that doesn't belong to her. She gets stopped unexpectedly by law enforcement. They pull her and her kids out of the vehicle and next thing you know, you have a trooper that's out there with a crowbar that's going through, popping clusters off the door, prying open stuff on the door. He's ripping the vehicle apart. I guess what I would put forward is a reasonable person in that situation, I guess in a routine traffic stop for speeding, I don't think would expect a cop to walk out with a crowbar and start hacking away at their vehicle or looking underneath it or looking within a spare tire compartment. So, I do disagree. I do think that these messages, and I think the record reflects that these were clearly used to prove that she knew and intended to sell these drugs that were found within the  I think they're a critical piece of this case. Lastly, on the fourth prong, this evidence was unfairly prejudicial, so we have to look at what probative value did these bring. Again, our position is that it doesn't have any probative value because I think it's clear that Ms. Howard didn't send these messages and I don't think she knew that this photo was on her phone and it wasn't even taken with her phone. If we look at the unfair prejudice, we see how the government used this information. It was used to show that Ms. Howard knew that there were pills inside of the vehicle and that she intended on selling these narcotics or being in possession of the firearms that were found there as well. The second issue that we raised was in regards to hearsay. So, our position is that Exhibit 44, the Text Now messages are hearsay. I don't think there's any dispute that these are out-of-court statements that were made by an individual named Pink, and they were made and Pink didn't testify at trial. So, we have to look at whether or not this is for the truth of the matter. If we look, the United States throughout pretrial, throughout trial, in their closing, and in their rebuttal, all used these text messages to show that there was prior drug dealing behavior, that Pink was seeking drugs, that Pink was buying fentanyl pills for $10 a piece, that she went to a bar called Slammer's at an ATM. Now, that Slammer's bar is located just down the road from Ms. Howard. They used that throughout the entirety of this trial and the pretrial to establish that Ms. Howard was selling narcotics. Now, her statements were admissible as admissions by a party opponent, right? Her text messages were admissible, right? Your Honor, I would not dispute that. Okay. So, then why isn't the other side of the conversation admissible for context? In other words, you don't know where here is unless you know it's Slammer's. And so, showing one side does not provide the context. And so, it provides the context for her own statements, not the truth of the matter asserted for the other statements. Your Honor, and I still think that when we're looking at the context, this Court's made clear that when we're looking at context, we're looking at, are these statements material or immaterial? And I think the statements that they were relying on that were made by Pink are material and they were being used for that truth of the matter asserted. So, I guess I would disagree. I think that her responses could maybe come in as an admission, but I still don't believe that the Pink messages could come in. And with that, we'd also, we raised our Constitutional Confrontation Clause issue. We would rest on our brief on that issue. Thank you. Thank you. Good morning. May it please the Court. My name is Matthew Greenlee for the United States. Throughout this case, the issue has always been whether or not Ashley Howard knew there were almost 1,000 pills and three firearms concealed within the doors of the vehicle that she was driving from the Twin Cities area to Fargo, North Dakota. Once we could show that knowledge, and that gets us 90% of the weight of the conviction. And everything concerns whether or not she had intent and knowledge. The United States filed a motion in limine to admit Exhibits 44 and 45 in this case. The United States had to prove that the defendant knew she was in possession of the controlled substance. And actually, the jury instruction read that we had to prove that she knew she was in possession of fentanyl. We had to show that the defendant knowingly possessed firearms in furtherance of this crime. And even if we had relied on the aiding and the abetting theory, we had to show that Ms. Howard knew that a crime was being committed. And she knew it ahead of time so that she had time to withdraw from that crime. So all along the way, the United States had to prove this very specific intent with regard to these drugs and the guns. It wasn't just simply her general denial and pleading not guilty that put her knowledge and intent at issue in this case. The BAD ACTS evidence was admissible in this case for any permissible reason up until there's a contrary determination. And that BAD ACTS evidence can be for permissible reason and also impermissible if the probative value is not substantially outweighed by the unfair prejudice of that predisposition. Let me ask you this. So the text messages are one thing. We kind of had a discussion about that. But the 15-month-old picture, it looks like it didn't even come from her iPhone and was  I can't figure out how that's admissible. So the testimony at court was that that so-called blurry picture, and even though it was blurry, it did show that it was blue pills in the corner of a baggie packaged exactly like some pills from the vehicle. That image was created according to the metadata in December of 2021. But that metadata also showed that it had been accessed on the defendant's phone seven days prior to the arrest, so in March of 2023. And that's the phone that the defendant had in hand when she was sitting in the squad car. Couldn't that have just been, I mean, couldn't that have just been, hey, I got this weird picture on here and you opened it up and you're like, okay. I mean, it's possible that she looked at it for a drug dealing reason, too. Certainly, Your Honor. There was testimony that that photograph was created on this iPhone 13, which was not the defendant's phone. But there's testimony that that was the same phone that her boyfriend had, the boyfriend who had pled guilty to practically the identical charges. And I think in our case, what we're asking the jury to do and what we asked the district court to rule on was to look at that photograph together with those TextNow messages. And together, so you have this TextNow string that's occurring over 11 days, and I realize the defendant is arguing that we don't have anything hard saying that she's the one who was texting. But these are on her phone and it's 11 days' worth of messages and they're all dealing type messages. Can I come get 20 or 30? I need money. Well, I have $300. You know, we assume it's dollars. That's on the phone. And since we're talking about the text messages, I do want to concede the United States, in closing, did use this statement for the truth of the matter asserted, this running to the ATM and slammers. And in preparing for oral argument, I realized this, but that is also not hearsay because it falls under the present sentence impression exception. I'm running, like right now, running to the ATM and slammers. And then about a minute later, you have the same person texting, I'm here, which is indicative that where she was at the time she sent the message was close to where this person who is identified as pink ends up. So I think that, to answer your question, Your Honor, that that photograph is tied in with these otherwise vague messages about that we believe are a very clear record of drug dealing. Well, if we've got a truth of the matter asserted problem, and I'd have to look at it again, help us with harmlessness then. How would this be harmless? And I'm just going by what you said. I didn't think about the closing argument. The truth of the matter asserted only goes to that one, out of the entire discussion, I argued that running to the ATM and slammers quick actually did mean that pink was running in to use the ATM machine. And that was relevant to place her in close proximity to the defendant's apartment, which we have established through other testimony. Most of the conversation was, as you observed, Your Honor, it was either an admission by a party opponent or it was provided as context. It doesn't really matter if pink wants to purchase drugs. The truth of that statement isn't as important as Ashley Howard's response to the statement of, I want to purchase drugs. And Ashley Howard responds, I need money. So how do we get to harmless there here? I think the government argues harmless there. And the underlying question, if there are any errors here, whether it be truth of the matter asserted or 404B, I'm just trying to figure out what the government's best argument is on harmlessness of these errors. Harmlessness comes down to the strength of all of the evidence. Even if we were to remove Exhibits 44 and 45, we still have the defendant driving a vehicle with a very large, what I would characterize as a large amount of pills. This is approximately 975 pills in the doors. How they're packaged and concealed is indicative of distribution. And there's three firearms located in the same door panels. DNA evidence very strongly links the defendant's DNA to one of the magazines in the firearms. Then in an interview with a TFO officer, Ashley Howard very strongly denies on about three occasions that this green Durango didn't go to Minneapolis. Even though she admitted that she was there, she says that the vehicle didn't go. And so the inference that we're drawing from that is that she knew what was in the doors and wanted to separate herself from that green Durango. And then lastly, while she was detained in the squad car and she had her cell phone in her hand, she sends this text message, they're popping the doors. And she didn't send any other text messages to Toy Toy about being stopped or the officers finding marijuana in her vehicle, anything else. But when they get to the part where they're removing the panel from the door, when they're about to discover the contraband, that's when she sends the text message. So I think in light of all of that, Exhibits 44 and 45 would have a slight effect on the jury verdict. And then also for harmless error, the jury was instructed in Jury Instruction 16 that first of all, the jury had to find that Ms. Howard, they had to find unanimously that Ms. Howard is the person who committed these acts. And they could only use the evidence for purposes of knowledge and intent. And the United States argued that in its closing, that the jury could only use the information for knowledge and intent purposes. So I think for all of these reasons, if there was an error, it's mitigated strongly by that instruction and the United States abided by the court's instruction. I do just want to flag my own issue with the ATM, but of course this court can affirm on any grounds, even if it wasn't squarely addressed by the district court below. I would point out that on the remoteness factor, that is just one of four factors and it's not a requirement of admission of 404B evidence. So that even if that photograph was very old, if it's particularly similar, it doesn't matter if it's old. So I think... And just to be clear, that it was the same blue pills? Or were they different blue pills? I don't know. We have another case with blue pills this week. So I'm trying to figure out, is this the same ones? Not the same in the sense that it's the same batch. So they were the same color, same size. We can't see the markings very clearly because of the blurriness, but they're packaged almost identically to some of the pills that were found in the vehicle. I think it was in Patino that, if the evidence is extremely similar, it's rendered irrelevant only by an enormous lapse of time. I would urge the court to affirm the judgment below. Thank you. Mr. Justin, you've used your time, but I'll allow you a minute if there's something you want to respond to. Thank you, Your Honor, and I very much appreciate the little extra time here. Just a couple points that I would like to focus on. The United States brings up this motion in limine that they raised, and it was kind of interesting how Exhibit 45 and 44 came up. Originally, they did a 404B notice using Judge Strasse's concurring opinion. They threw the kitchen sink at it, listed, I think, six out of the nine exceptions to 404B, and then they realized, well, maybe it's not 404B, and then they filed this motion in limine for extrinsic evidence, but the court never got to intrinsic evidence. It just stuck to 404B. As far as the harmless— Your Honor, on that point, really quickly, knowledge and intent. You agree that this is admissible, though, for knowledge and intent. It just doesn't satisfy the four-part test. Yes, Your Honor. I think the case law is abundantly clear that any knowledge and intent in these kinds of As far as the harmless error is concerned, the United States focuses on some of the evidence, but this — the drugs and the pills were hidden inside of the vehicle. The DNA was found on one magazine inside of the gun. It wasn't found on the other three guns or the bags of pills. These couple, you know, lying to law enforcement I don't think is necessarily uncommon, and having your door ripped apart during a routine traffic stop is a little bizarre. We'd ask that you reverse. Thank you. Very well. Thank you, counsel, for your appearance and argument. The case is submitted and we'll issue an opinion in due course. That completes our docket for the day. We'll be in recess until 9 a.m. tomorrow morning.